161476 Advanced Video Technologies against HTC Corporation. Mr. Morris, you're ready. May it please the Court, Your Honor. I'm Robert Morris on behalf of AVT. The District Court's order granting sanctions against AVT was an abuse of discretion. It should be vacated for several reasons. First and foremost, the District Court got the underlying issue wrong. AVT owns the patent. The District Court applied the wrong law. Well, wait, you didn't appeal the underlying merits issue. We did not. We did not, Your Honor. Okay, so we have to assume that it's right at this point, right? Well, there's a judgment. There's a judgment and we're not appealing the judgment. We had a question of time. Okay, but we can't look behind that judgment to determine whether or not 285 fees would be warranted. Can we? Well, you can, Your Honor. All I'm asking you to do is to look at the law that was applied and look at the facts that were applied because that goes to the heart of the subjective and objective intent of all of the parties and all of their actions. Okay. We're not asking you to reverse the lower court decision. We're just asking you to, the court's decision is based on how people acted, what they did, what they were doing at all times. And the lower court just got it all wrong. The lower court applied, the key document in the appeal is the purchase order agreement. The purchase order agreement was A352 to A354. The purchase offer agreement was a document. You never even argued this anywhere in your briefs. You stand up and the first argument to us is the lower court got it wrong. We always owned the patent. Tell me, show me where in your brief that argument is made. Sure, on page 21 of the opening brief, of our brief, further evidence regarding the strength of AVT's claim can be seen from the fact that another court could have easily determined that AVT did in fact own the 788 patent based on the record below. How is that an argument that the lower court got it wrong and we did? This seems to be at best an argument that our case and our arguments were not in fact frivolous. In fact, another court could have come out the other way. Not that this court came out the wrong way. Look, there's a million cases we see that could have come out one way or the other. A lot of cases could be close. So your argument here is at best that a different court could have decided this case differently. It's not that this court got it wrong. The next page we go on, we say AVT, Epogee nevertheless acquired all of AVT's assets by virtue of the purchase offer agreement. That's just what I just said, Your Honor, with all due respect. Where is this? That's on page 22, which clearly stated the terms agreed to by the parties for the proposed sale of AVC's shares to Epogee. I'm not taking this out of left field. The order for sanctions is based on the fact that AVT went off and they supposedly were bluffing. They supposedly knew of the defect in title the entire time. No, I don't think he said they knew of the defect in title. What he said is they had reason to know there might be a defect because the two gentlemen, names of which escape me at the moment. Mr. Gross and Mr. Cohn. Yes, had that in that earlier email exchange had acknowledged there might be a problem here, but then just decided to move on to other things and ignore what potential problem which could have been rectified by simply them finding out whether or not documents had been filed in this case as they were supposed to have been. They may have had a good faith belief that that should have happened in the regular course of things, but they at least demonstrated, and this court relied on, the evidence that demonstrates that they had a question about whether there was actually ownership. Legitimate question and didn't pursue it. But your honor, in your discussion just now, you talked about the documents that should have been filed. There didn't have to be any documents filed. If there was a short-form merger, which is what the court went off on, on a tangent that basically followed a tangent set out by the defendants, a short-form merger would have required documents to be filed in the state of Delaware. With regard to this, were they acquired, and the court found that Epogee had acquired 100% shares of the stock. Why don't we just assume, for purposes of this argument, for the rest of the argument, that I will not go behind the district court and decide whether it decided Delaware corporate law properly, because even if you have a single errant sentence in your brief, you didn't meaningfully explain Delaware law to me in a way that I could, on appeal, make a determination of the accuracy of the district court's decision on this state law question. You didn't cite to me all the relevant Delaware statutes. You didn't go through the law and explain it to me. So from here on, assume I don't think you meaningfully raised that issue. So from there, answer the question. With all due respect, Your Honor, what about the true blue case that we cited that was Delaware law? You don't get to ask questions. It's not the way this works. I'm not trying to ask questions, Your Honor, with all due respect. But you just told me to ignore Delaware law because we didn't cite any, but we did. No, you argued that your position wasn't frivolous, which frankly, the trial court didn't say it was frivolous. The trial court said you had a good faith belief that you owned it, but there was enough that should have raised questions and you should have looked behind it. So let's go forward. You have other arguments. So let's look at your other arguments. Sure, Your Honor. If we just go straight to 285, 285 and basically the Octane case sets out the totality of the circumstance test that you're supposed to do to decide if a case is exceptional. In the Supreme Court's case, HALO, HALO made clear that the district court, while they can be provided with a wide latitude of discretion, is not boundless. They can't just go off on a whim. We contend that that's what happened here. HALO states that sanctions are appropriate when conduct has been, quote, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate. None of that's the case here. In fact, again, your problem with this argument is that you're really asking us to rethink the discretionary aspect of the court's decision. Let's talk about prevailing party. Sure. Okay. Now, let's assume that I agree with you that dismissal for I want a prevailing party. Did you preserve that issue below? We believe that we did, Your Honor. Okay, but the places that you cited us to were only places in which you had discussions that talked about the fact that, well, we can just restart this case, so it's not a big deal. I don't see you actually saying to the lower court that there was a predicate that was a requirement prior to the award of 285 fees. Did you ever make that argument? I don't think we got more precise than what we said, Your Honor. The dismissal was without prejudice. The dismissal was related to jurisdiction. None of the substantive issues got involved in any way other than having a Morkman hearing. There was one hearing. There was one dispositive, or not dispositive motion, but there was one motion that dealt with the subject matter of the case. It was a motion that was filed by the defendants to invalidate part of the patent for the patent, and that was denied. Would it have mattered to your argument whether or not you can refile? Because you certainly stressed in your blue brief at various pages that we can, and in fact did, refile this litigation, and now we're proper owners. Would that have mattered? And what I mean by that is, suppose you came to court asserting ownership, and you didn't in fact own it. Someone else did, and suppose they were unwilling to assign it to you, such that you would now never be able to sue when this patent. Would that matter to your view of whether or not the prevailing party status had been met? I know that's not your facts. Don't worry. I understand that, but I want to know, would that matter? Because that would seem to very much change the circumstances as between the parties, and in a way that you're not true here. I get it. But I'm trying to understand, you know, the impact on the law if I decide that standing as a whole, and a dismissal for lack of standing as a whole, as opposed to maybe some nuance in this case, but your argument was dismissal for jurisdiction, dismissal for standing doesn't count. And so what I'm trying to understand is if it doesn't count, and yet you could see factual scenarios like the one I just raised, where it does seem to meet the legal test, right, which is changing the nature of the relationship as between the parties kind of thing. Here, it's not true. I know, but what do you think about that? Tell me how I should do that. Hypothetically, I see how you can get there. My only problem, even with the hypothetical, is how do any of those additional facts that you can't refile, and who has the ownership of the patent, how do those ever get on the record? How do those ever come into play? Because you file the case you went forward. Now you're going to try to file it again because the district court in that kind of a situation would go and they would find, well, somebody else owned the patent. If you went now, now you're outside the scope. That case was dismissed. But you argued this to us in the blue brief. You argued that one of the things that should help me understand why a dismissal for lack of standing doesn't change the relationship between the parties is the fact that you do now own and were able to refile. You made that argument. You're the one who told me these facts are relevant to my decision-making here. Your Honor, it is our view that we always own the patent. There was a contract. There was a contract on the sale of a company from ABC. That's not what you argued at blue brief page 15. I'm not saying, but what you said is there was no change in the standing because we were able to refile this suit with no defect in ownership. Right. But I mean, it's very fact-specific. Part of it is because the court found that everybody involved truly believed that they own the patent. The court found, and all of the people were the same people. That's exactly your problem, isn't it? That after the defect, whether it was real, whether it could have been overcome with additional arguments or whatever, after the defect came to the surface, it's easy enough to understand why this court would have appreciated that the easiest solution is, all right, we'll fix it and we'll start again. But isn't it equally easy to understand why the district court would have thought in that case, why should they have been put through this defense in a case that you're now dropping for other reasons, perhaps to avoid having it go against you, or perhaps just because it's more straightforward, because it's quite conspicuous, is it not, that all of the attorney's fees that were requested were not awarded? They were cut almost in half, so that this court was trying to come up with something that's reasonably fair in the case, because it is an exceptional circumstance where, when a defect in title is pointed out, you drop the case, you file again, having cured the defect, although you now tell us it wasn't defective. So it is difficult, is it not, to say that this district judge did something unfair or unjust? Well, even if I go down that path, Your Honor, the district court stated, and I believe that's on A-76, that this was the first time it had ever happened in any patent case she ever had, that a plaintiff didn't own the patent, and by itself, that's enough to make the case exceptional. This court has dealt with countless cases where people... Well, maybe it is. You drop the case. Almost very soon after this flaw, this defect, after Discovery found the exchange of emails suggesting that this weakness might exist. We did, Your Honor. It was a question of timing. The patent was about to expire. The life of the patent, once the patent expires, the six years, basically statutory period, we can collect damages. The clock is just ticking, and every day that goes by, the value of the asset's gone. Why does the fact the patent was about to expire relate to whether or not this was an exceptional case? It really was just a question of whether or not we decided to appeal that decision, in which case we basically would eat up another two years of life, or we were able to go to Delaware. We followed the instructions of the judge because the judge gave us guidance that said, you go do this. That's fine with me. That'll fix the issue. And so we did what she told us to do because we were back in the saddle like six weeks later, not two years. One of the things that's odd about the lower court decision is the court's repeated reference to the ownership status of the patent holder, and there are some statements that said there has to be some deterrence against trolls, as she described them, but you don't actually raise on appeal whether that is an appropriate consideration for the lower court to take into account. I mean, you know, don't hold me to the exact word count, but I think something like 20% of the text is basically a political argument about trolls. Right, but you didn't raise that point on appeal. You didn't complain about that. You didn't say that that was an improper consideration for purposes of the court's exercise of its discretion. No, we did not on this appeal. We did that in our other appeal, Your Honor. We refiled the cases. She dismissed the cases for a lack of credential standing. Then we raised that issue as part of that appeal. Here, like I said, and with regard to 285, if I could continue, Your Honor, for a couple of seconds, she found the case exceptional because by itself there was no standing. There were countless cases that this very court has dealt with where people didn't have or found to not have standing. And no sanctions were awarded. The cases weren't exceptional. For example, you know, there was a district court case that we cite to the Orbit case. And in that case, that district court found, expressly found, that lacking standing alone does not make a case exceptional. Okay, let's hear from the other side. We're running over a bit. We said this wouldn't be a lot of time. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. In terms of the very last question that was being discussed as to whether or not the court below had abused its discretion in coming to its finding, the court below in no means said that the only reason that it found that this was an extraordinary case was simply because that court had not had cases involving standing. She said the fact, I've never seen a case like that, that alone, and this is a direct quote, that alone makes this case exceptional. She did, Your Honor. But in the very next paragraph, she said, additionally, surveying the totality of the circumstances, I find that at least two of the factors in the court suggested district courts consider warrant imposition of fees and costs here. Objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence, citing to opting fitness. And that's that second aspect is where her whole thing was all about I'm on a tirade against trolls. And the reality is whatever policy attitude you have toward trolls who there is, who owns the patent is, it might be relevant for purposes of determining whether an injunction is appropriate. But to say that because someone is a troll in that judge's view that therefore there is more of a need for sanctions seems kind of out of bounds, doesn't it? That's not actually how I read Her Honor's opinion. While she explained that this was a non-practicing entity whose sole purpose was to file lawsuits, and therefore should have had a heightened understanding of making sure that it had standing. The way that I read Her Honor's deterrence was not specifically aimed at non-practicing entities or patent assertion entities, but instead saying no one should come to my court unless they have made certain that their record is clear that they own their patent. I don't think she was saying... She wrote like an article about how bad trolls are and how they're sucking the life out of society. I mean, this was not just a passing reference to the fact that they weren't a practicing entity. No, I understand that, Your Honor. But what I'm saying is that in page 879 of the record when she specifically comes to the deterrence finding, she specifically holds that AVT was aware of the possible defects in title from the very beginning and goes on to say that the fact that they took no steps to confirm it was something that she was trying to deter, that she was trying to make sure that if anyone, whether troll or not, realizes that there are potential defects in title, they should do something to make sure that they've cured those defects before they come into court. How is that consistent with her finding that there was no bad faith and that actually they naively believed that they had it, but they believed that they had the title? What she first indicated was that there's no proof of bad faith, but what she said instead was this was a risk that was taken, that when they understood that there was some potential problem, that when Mr. Gross said, I don't have the documents, I'm not sure whether or not we can perfect that chain of title, that should have clued them in to checking out whether or not they could perfect their title. And so they're not necessarily inconsistent. What does she mean when she uses the acronym PAE? Patent Assertion Entity. That's a non-practicing entity. Correct. Okay. So when you said you interpreted her deterrent rationale as being broadly, utilitarianly, extending to everyone, don't come into my court, you said, without ownership, but let's actually read the sentence. Absolutely, Your Honor. This sanction will serve as a deterrent to other PAEs who might prefer to ignore doubts about their title, warning them to make sure they own the patent before initiating suit. Does that, that's the quote from her opinion. Doesn't that sound like she might be directing this at her, what she calls, PAEs? I think that's one portion of what she's directing it at. But if you continue to read the opinion down through the rest, when she's distinguishing from the TriReam case, she focuses on the notion not that they are PAEs, but instead that AVT here was aware of the possible defects. Is that in the place where she's talking about why her deterrent rationale? Yeah, it's on page A79, underneath the notion that she's talked about deterrence up above in the finally consideration. Finally, that paragraph is all about deterrence. I don't see anything in the next two paragraphs about deterrence. Where are you pointing me to? What I'm pointing you to is the paragraph, just two paragraphs below. So she has one paragraph. Is the word deterrent anywhere in that paragraph? No, it's not. Is there anything at all about deterrence in that paragraph or any sentence at all that would suggest to you that she is continuing to discuss deterrence? The way that I understood the order, Your Honor, was in reading completely through. Is there a header that said deterrence and this falls under it? No, Your Honor, but it comes right after she describes the consideration of deterrence. She said there were two reasons. No, no, it doesn't come right after. It comes actually two full paragraphs after. Correct. And it comes above the heading for AVT's counsel. So when she says, I'm now switching topics onto another topic. And so my reading of the order was that that was also a portion of what she was hoping to deter. I understand Your Honor's question. And in terms of was this... Because I think when you said, no, no, she's applying this to everyone. Don't come into my court. I think, let's just say that's a bit of an overreach on your part, which diminishes your credibility a little bit. And I apologize for that, Your Honor. I did not intend to do that in any way. But I do believe that, in fact, the notion of deterrence does go to all entities to perfect the title. You may think that, but she didn't evidence that. She thought that. Thank you, Your Honor. Let's get to the legal requirements. You agree, do you not, that prevailing party status is an underlying requirement of an award of 285 feet? Yes, Your Honor. Okay. Yes, Your Honor. Now, putting aside the waiver question, your red brief seems to collapse the distinction between, which I believe there to be a distinction, between there has to be some determination on their merits and there has to be an alteration of the relationship between the parties. I read those as two separate requirements, as have multiple courts, not just ours, but courts considering 54D and 1988, both provisions we've said we look to to help determine prevailing party status. Yes. So I get what you're saying is that you believe there was some difference in the relationship between the parties. But do you have a single case that says that a dismissal based on lack of standing is a merits-based determination? I do not, Your Honor. I do, however, have the U.S. Supreme Court case that we sent in via letter to the court, which is the CRST versus the EEOC case. And in the CRST versus EEOC case, the Supreme Court took up the meaning of prevailing party. Now, that case wasn't an EEOC case under Title VII. It was not a patent case. However, what the court said there was that Congress has included, this is on page, sorry, it's the very beginning in page 1646 of the Supreme Court edition. The court said Congress has included the term prevailing party in various fee-shifting statute. And it has been the court's approach to interpret the term in a consistent manner. The court went on to indicate that for a defendant, prevailing party status could occur when a case was dismissed. And in that case, in that EEOC case, it essentially was also a standing issue because there had to be various steps that had to be taken before the lawsuit could be filed. And what the court found there was that the EEOC had not accomplished all of those steps. And I would say that's directly akin to the notion of perfecting title to a patent. And here, title had never been perfected. And therefore, the dismissal was merit-based for the party as it was in the CRST case. And we also look, especially in the CRST case, at page 1651. The court indicates that a plaintiff seeks material alteration in the legal relationship between the parties, but a defendant seeks to prevent the alteration to the extent that's in plaintiff's favor. And the court goes on to say that the distinction between merits and no merits doesn't have the same meaning for defendants, that it is, in fact, the change of circumstance, the change of relationship between the parties that matters. The Supreme Court goes on to say that, in fact, the policy of making sure... What's the date of the CRST case? Because at least I never got anything, any letter. I didn't either. Did we get it? So, it was sent... We mailed it to the circuit and executive clerk of the court on July 28th. And the case itself, we mailed it July 28th. I actually have a... I have a copy of it here with the case citation and the file endorsed date at the top. And we mailed it to the court. And the date of the case itself was May 19th. And it was actually printed and electronically available only after we filed our briefs. So, that's why we sent it in on July 28th. And you did not submit it electronically? No, I have it. We did submit it electronically, Your Honor. Yes. And, in fact, like I said, I have the endorsed electronic stamp, the ECF stamp at the top, indicating the pages that we sent for case 16-1476. It's document number 63, page 1, filed, and then all the dates indicating that we did mail them. It was circulated after the panel was selected. Okay. I must have missed it somehow. And so, we actually believe that that case controls here. And it's a very... It's very, very on point because the Supreme Court is basically saying that it would thwart the policy of having these very types of statutes if we were to look solely to whether or not you had to go all the way through a merits-based distinction. Well, assuming they didn't waive this argument about prevailing party status, why would the question of standing in this case with the facts in this case materially change the relationship between the parties? For a number of reasons, Your Honor, but the most important of which, we can look to the Sweepstakes case that we actually cite. In the Sweepstakes case, the court there, while not finding that the case was exceptional, did find that the prevailing party status had taken root after a standing issue because the amount of damages available to the parties changed. And so, the relationship between the parties did, in fact, change. At one point, they were able to claim back six years, but having to refile changed the amount of time at which the damages would take place. In this case, it was almost three and a half years of damages that was taken off the table. And, in fact, there were a number of products whose end of life happened in that three and a half year period. And so, they were no longer eligible to even be brought into the case. So, I think that's the principal reason. If you don't look to the CRST Supreme Court case, which says that the prevailing party is just, in the defendant's case, someone who has put off a case, a case that the court, in that sense, deemed frivolous because it wasn't fileable. Well, but that's not what happened here. This was fileable. They did refile. But in the CRSAT versus the EOC case, the holding was you hadn't met your condition precedent. Here, in order to refile, they actually had to go back to Delaware, appoint a receiver, have the receiver transfer additional assets, which changed the legal relationship between the parties there as well. And then they refiled, only after that. So, they were not even the same party holding the same materials that they held in the first case. So, the legal relationship between the parties definitively changed. Now, secondarily to that, we actually filed a secondary motion to dismiss because even though they'd gone back and gotten some of the assets from the AVC entity, the assets that they had weren't sufficient to support... Now, none of the arguments that you're making right now about the change in the amount of damages, for example, amounting to a change in the relations between the parties were made before the district court that I saw. But is your argument that, well, of course they weren't because they waived the whole question of prevailing party and we had no reason to introduce it? Because I would have a hard time, if I had to decide this case, utilizing those facts that you just gave me because certainly there's no evidence in this record as to how much the damages were or were not changed. That's correct, Your Honor. In fact, those issues were not raised because the patent owner did not raise those issues below. And so they weren't briefed with the district court below. Instead, for the first time on appeal, we were told, oh, you're not a prevailing party. And so we did the research to find as close a case law as we could. Sweepstakes was the closest case law that we could find. And in that case, like I said, even though it was not a finding of an exceptional case, the court did find that there had been a change in the relationship of the parties by virtue of the fact that damages had been lost because of the new timing that had come forward. I just have a problem with the notion that you can waive the actual legal predicate for a determination. I mean, everybody knows that prevailing party status is the legal predicate to an award of attorney's fees or costs or, you know, in any number of statutes. And the fact that the trial court just never even made that decision, I mean, do you have to raise it? Because why wouldn't you think the trial court would make the finding? But, Your Honor, I think we did believe that the trial court did make the finding by virtue of the fact that the trial court did say that we were allowed fees under its discretion. And if you look to the... But she never said, because you're a prevailing party. She didn't say that. Those words were not in her order. I mean, why shouldn't we vacate and remand and say, determine whether or not there's prevailing party status here and you can consider any new case. All that has come out of the Supreme Court. And in assessing exceptionality, assuming there's prevailing party status, that you should not take into consideration the nature of the patent ownership. I honestly believe, Your Honor, that in fact, the prevailing party status is and has been met by virtue of the fact that we won the case below and there was a change in the relationship of the parties as established by all of the arguments that we've put forward here. And they're directly supported by Supreme Court precedent that Your Honors can take note of at CRCT versus EEOC. So I believe that all of the tests had been met. So to the same extent that patent owner can now argue for the first time about the prevailing party issue, we can defend ourselves on the prevailing party issue the same way. And Your Honors can take note of that. And I believe that the status of the relationship did in fact change and we directly fall under the CRCT case. And although she didn't expressly address whether you were or were not a prevailing party, whether dismissal for lack of standing counts as a merits-based dismissal, she may not have addressed any of that. But you moved for fees and asserted in the briefing you were a prevailing party and they responded and didn't contest it. Isn't that right? That's correct, Your Honor. And Her Honor found... You expressly asserted it. We are a prevailing party. That is absolutely correct, Your Honor. Those words appear in your briefs. That's correct, Your Honor. Thank you for pointing that out. But at the time that was filed and at the time the court made that determination, the current state of the law was that prevailing party status needed a merits determination and that standing was not a merits determination, right? I was not able to find any cases that said that simply standing was a merits determination. I also did not find any that said that it was not. On the circumstances... I could probably give you 20 or 30 right now. Your Honor, I'm sorry, I meant to say on the circumstances of this case. Absolutely, there are cases where standing is some form of procedural defect that it itself may not. That's all I meant to say and I was not trying to overextend. But the CRSA T case absolutely is directly on point and goes to the heart of whether or not a prevailing party as a defendant has to be to the merits determinations. And it said that it did not. Anything else for Ms. Keefe? Any more questions? Thank you, Ms. Keefe. Thank you, Your Honor, very much. Okay, Mr. Morris, you have, let's say, three minutes. Thank you, Your Honor. With regard to CRST, the Supreme Court did not indicate that you still don't need some kind of preclusive judgment. In fact, the Supreme Court even brought it up and chose not to address it in the decision itself because the parties never put that argument within the writ of certiorari. With regard to whether waiver is effective or not, I just want to direct the Court to the automated merchant systems case, 782 F. 3rd, 1376. In that case, this Court dealt with the fact that it could still deal with things even if it was waiver. So even if you find that there was waiver, you can still take our side in the prevailing parties case. In our brief on page, I guess this is our reply brief, I believe, on page 4, we cite to that case and say, nevertheless, even where an argument has been deemed waived, appellate courts frequently exercise their discretion to entertain such arguments when they're based purely on a legal issue and do not require any additional fact-finding. With regard to this CRST case also, I hope that Your Honors have a copy of this letter that was filed as Document 40, or 64, it looks like, on August 19th of 2016. This was our response to that case. And we do note that, as Ms. Keefe acknowledged, it was an EEOC case. It wasn't a patent case. And in civil rights actions, courts frequently apply a heightened standard in deciding whether or not to apply attorney's fees that we don't believe applies to the present facts. With regard to the, going back to the district court's opinion in 285, a couple of issues that I never really got to, that were raised by Ms. Keefe on her discussion. We talked earlier about the by-itself decision by the court, the fact that there was no standing. And Ms. Keefe brought up a couple of places where we talked about objective reasonableness or unreasonableness, as the court found. It's the objective unreasonableness that I was going to in the beginning when I was trying to lay out the reasons why the real decision was that ABT owned the patent. But in fact, within the body of the order itself, there are repeated examples of contradictions by the court where she made a finding of objective unreasonableness that just don't make sense. For example, the judge said, quote, that Chang, Homer Chang, was not knowledgeable about corporate matters because he was just an engineer. If you read the opinion at A-77, it makes no sense at all. The man was CEO and chairman of the company. You've got to know about corporate matters. That's who he is. He's not an engineer. I don't know why she characterized him as an engineer, but that was part of why we were objectively unreasonable. The court also said she found that A-75... Well, but if he was a lot more than an engineer, then that might have led her to conclude that he acted in bad faith. Right? In other words, she's saying you can't rely on him because he was an engineer, but if he had enough knowledge to know better, that could have made it worse for you, right? I don't know many presidents or CEOs or chairmen of the company in any startup company in Silicon Valley that get down to the weeds of trying to file patent assignments or documents like that. I mean, that's what the issue was about. I think we have the issues. We'll figure it out. Thank you very much, Your Honor. Thank you. Thank you both. The case is taken under submission.